# Richmond

HOWARD A. MEISSEL v. JAMES D. FINLEY, II, ET AL.

November 26, 1956.

Record No. 4563.

Present, Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*Ernest S. Merrill* (*Earl W. White*, on brief), for the appellant.

*P. A. Agelasto, Jr.*, for the appellees.

BUCHANAN, J., delivered the opinion of the court.

This appeal brings under review a decree of the court below holding to be reasonable and enforceable a covenant in a limited partnership agreement restricting the right of a limited partner to write insurance or surety bonds for a specified time and within a specific area after any dissolution of the partnership.

The suit was brought by the appellant, Howard A. Meissel, sometimes referred to as the plaintiff, against the appellees, sometimes called the defendants, for an adjudication of rights under the declaratory judgment statutes. Code §§ 8-578 *ff.* The defendants answered and two of them, James D. Finley, II, and Lowery D. Finley, Jr., general partners, filed a cross-bill alleging that the plaintiff had violated the covenant and praying for an injunction. The decree appealed from dismissed the plaintiff's bill and granted an injunction restraining the plaintiff from engaging in the insurance business as provided in the covenant. The plaintiff makes six assignments of error to this decree which challenge the validity of the restrictive provisions on the grounds to be noticed.

By a written certificate dated December 13, 1950, and pursuant to Title 50, Chapter 2 of the Uniform Partnership Act, Code §§ 50-44 *ff.*, the parties litigant formed a limited partnership under the firm name of Lowery D. Finley & Company, in which James D. Finley, II, and Lowery D. Finley, Jr., two of the defendants, were general partners, and Howard A. Meissel, the plaintiff, and Mary F.

Cox and William Rueger, III, the other two defendants, were limited partners. Its purpose was to conduct a general insurance brokerage and agency business. The general partners were entitled to draw against profits $1,000 a month plus 31% of the remaining profits, and the limited partners were to have $500 a month plus 24% of the remaining profits to Meissel and a smaller percentage to the other two limited partners.

By Clause XIV of the agreement it was provided that the partnership would be dissolved by the death of any partner, and that any one of the partners might dissolve it upon 60 days' written notice; and it was further expressly provided as follows:

"* * in the event of any dissolution of the partnership no limited partner shall enter into the insurance business under his or her own name, or associate himself or herself with any agency, firm or corporation in Norfolk, Virginia, or the geographical territory within fifty (50) miles of the City of Norfolk, which is or may be engaged in the business of writing insurance of any kind or in writing any kind of surety or fidelity bonds, for a period of five (5) years from the dissolution of this partnership, except in association with a successor to this firm, as established by the General Partners, their heirs, executors, administrators or assigns. Each of the Limited Partners in consideration of his or her admission to the firm and the benefits which he or she expects to receive from the firm and association with it, expressly agrees to keep and observe this obligation and undertaking for the time period of five (5) years from the dissolution of the firm, and additionally each agrees that he or she will not solicit personally or by mail, or through any other method, any client, customer or patron of the partnership within such period of five (5) years from and after the dissolution of the partnership created by this certificate."

Restrictive provisions of this character have been dealt with by courts in almost unnumbered cases. A great array of them are cited in a learned and elaborate opinion by Judge Hoover, of the Court of Common Pleas of Ohio, Cuyahoga County, in the case of *Arthur Murray Dance Studios* v. *Witter*, 105 N. E. 2d 685, in which he referred to the authorities as constituting a vast sea out of which one could fish out "any kind of strange support for anything, if he lives so long." The result of his own expedition is stated to be: "Each case must be determined on its own particular facts."

In the case of *Welcome Wagon, Inc.* v. *Morris*, 4 Cir., 224 F.

2d 693, 698, in an opinion by Judge Dobie, the guide to decision is well stated as follows:

"* * Modern courts have usually, in passing on these contracts, employed three criteria: (1) Is the restraint, from the standpoint of the employer, reasonable in the sense that it is no greater than is necessary to protect the employer in some legitimate business interest? (2) From the standpoint of the employee, is the restraint reasonable in the sense that it is not unduly harsh and oppressive in curtailing his legitimate efforts to earn a livelihood? (3) Is the restraint reasonable from the standpoint of a sound public policy?"

See also Annotations: 52 A. L. R. 1362, 98 A. L. R. 963, 41 A. L. R. 2d 15 (on restrictions as to time; and cases involving restrictions for five years at p. 199), 43 A. L. R. 2d 94 (restrictions as to area; and cases involving 50 miles at p. 298); 46 A. L. R. 2d 119; Williston on Contracts, Vol. V, §§ 1636-7; Restatement of Contracts, Vol. II, § 516.

In the recent case of *Worrie v. Boze*, 191 Va. 916, 926, 62 S. E. 2d 876, 881, we said:

"That restrictive covenants of this character which reasonably protect the employer's business and are incident and ancillary to the contract of employment and limited as to area and duration are enforceable in equity is not open to question." They will be enforced in equity " 'unless found to be contrary to public policy, unnecessary for the employer's protection, or unnecessarily restrictive of the rights of the employees, due regard being had to the subject-matter of the contract and the circumstances and conditions under which it is to be performed.' "

■ The subject matter of the present contract and the circumstances and conditions under which it was to be performed appear from these facts:

In September, 1933, the plaintiff first became associated with Lowery D. Finley, Sr., now deceased, who had commenced a general insurance and bonding business in 1910 under the name of Lowery D. Finley & Company.

Plaintiff's first written contract of employment was made with Finley in 1937, by which plaintiff was employed as manager of the insurance offices of Lowery D. Finley & Company, in Norfolk, at a salary of $250 a month and 25% of the annual net profits. By that contract the plaintiff agreed that for a period of five years after its expiration or cancellation the plaintiff would not engage in the in-

surance business in his own name or in association with any agency in Norfolk engaged in that business; and that he would not solicit any customer of the company in Norfolk or vicinity for a like period.

By a writing dated May 1, 1945, a limited partnership for the conduct of the business was formed in which Lowery D. Finley, Sr., was a general partner, and the plaintiff and Lowery D. Finley, Jr., and Mary F. Cox were limited partners, under the terms of which plaintiff was to receive a salary and a share of the profits. This contract contained a restrictive covenant applicable to the limited partners practically identical with that quoted above from the contract in suit.

Subsequently, by written certificates, all signed by the plaintiff, and dated respectively December 31, 1945; December 31, 1947, and December 31, 1948, changes were made in the personnel and compensation of the limited partners. All contained the same restrictive covenant as to the limited partners.

The partnership so continuing through these years as Lowery D. Finley & Company was dissolved by the death of Lowery D. Finley, Sr., on April 13, 1950; and on April 19, 1950, a new certificate of limited partnership was executed in which James D. Finley, II, and Lowery D. Finley, Jr., were general partners, and the plaintiff and Mary F. Cox were limited partners. This agreement contained the same restrictive covenant as to the limited partners.

Thereafter, on December 13, 1950, the certificate first above mentioned was executed admitting William Reuger, III, as a limited partner and containing the covenant above quoted.

A certificate amending the 1950 agreement was on October 30, 1951, executed by the parties to the 1950 agreement. It revised the latter with respect to the division of profits, but by mutual consent continued in full force all the other terms and conditions of the 1950 agreement.

On July 12, 1954, the general partners gave notice to the limited partners of the dissolution of the partnership as of December 31, 1954. On August 31, 1954, at the request of the plaintiff, the general and limited partners executed a supplemental agreement eliminating the city of Suffolk from the area of the restrictive covenant; and by writing dated September 2, 1954, executed by the general and limited partners, it was agreed that the partnership should be dissolved and terminated on October 31, 1954.

After this dissolution of the partnership the plaintiff continued to work in the company office for a while, then resigned and in January, 1955, he went to work for an insurance agency in Suffolk, as permitted by the supplemental agreement.

Later, and prior to this litigation, he entered into the employment of Ames Insurance, Incorporated, in the city of Norfolk, which he testified was engaged in exactly the same kind of business as the Finley partnership was conducting. He said that he was really employed there to get the agency organized and that he was there doing the same thing as he did when he was with the Finleys. While he was with the Finleys, he said, he had full access to all of the office records and was familiar with all the policies that were issued by that office.

The plaintiff further testified that the gross premium business of the Finley agency would amount to between $650,000 and $700,000 a year, and that the company had carried on its business in the general surrounding territory within fifty miles of the city of Norfolk.

There was further evidence that the Finley agency wrote about five thousand policies a year and around twenty per cent of its business was outside of Norfolk and its immediate vicinity; that the plaintiff handled the renewals for a number of years and was quite familiar with the company's customers; that his job was to get the policies renewed and he had a list of every policy and its expiration date; that the company guarded its expiration list as something unusually valuable, and that probably sixty to sixty-five per cent of the company's business was on a three to five-year basis and the policies would come up for renewal in either three or five years.

In view of the subject matter of the contract and the circumstances surrounding its performance, we conclude that the provisions of the restrictive covenant are not unnecessary for the protection of the defendants and not unnecessarily restrictive of the plaintiff's rights. It is not contended that they are adverse to the public interest. The plaintiff said there were between 250 and 300 general insurance agencies in the area involved.

■ Under the facts shown in evidence it cannot fairly be said that the territorial limit of fifty miles around Norfolk and the time limit of five years were more than necessary for the reasonable protection of the defendants' business and good will. The area was practically coextensive with the business of the agency. While the larger part of that business was within Norfolk and its immediate

vicinity, a substantial volume was done outside of the city and, as stated by the plaintiff himself, the business of the agency was carried on in the territory of Norfolk and approximately fifty miles beyond.

The time limit of the restriction is directly related to an important element of the insurance business; *i.e.*, policy renewals. As shown, more than one-half of the agency's business was represented by policies that would come up for renewal in either three or five years. The renewal of these policies had been the plaintiff's job and he had a list of them and their expiration dates. It was information that he could use to the very great disadvantage of the partnership. As said in the case of *V. L. Phillips & Co.* v. *Pennsylvania Threshermen, Etc., Co.*, 4 Cir., 199 F. 2d 244, 246, "expirations" in the insurance field has a definite and well recognized meaning. It involves information which "enables the agent to contact the insured before the existing contract expires and arms him with the information essential to secure another policy and to present to the insured a solution for his insurance requirements." It is information "of vital assistance to the agency in carrying on the insurance business and it has become, in the insurance field, recognized as a valuable asset in the nature of good will."

The possession of trade secrets and confidential information is an important consideration in testing the reasonableness of a restriction on competition. *Stoneman* v. *Wilson*, 169 Va. 239, 247, 192 S. E. 816, 819; Anno., 41 A. L. R. 2d, *supra*, at 102.

In judging whether restrictive provisions are unreasonably harsh and oppressive on the covenator, it is relevant to consider the personalities involved as well as the circumstances of the transaction. The relation of these parties was something more than the conventional one of employer and employee. The plaintiff was a partner in and office manager of the company, entrusted with policy renewals and having access to all the records. Over a period of seventeen years and on eight different occasions he signed his name to written agreements promising that he would not, after the partnership was dissolved, engage in a similar business in the area designated and for the time prescribed. It is to be presumed that in that time and experience he was himself convinced that the restrictions he and his associates agreed on were reasonable and advisable.

As was said of the defendant in *Sonotone Corporation* v. *Baldwin*, 227 N. C. 387, 42 S. E. 2d 352, 355, one who is competent to serve

as did this plaintiff "is supposed to understand and fully appreciate the significance of his engagements. While the law frowns upon unreasonable restrictions, it favors the enforcement of contracts intended to protect legitimate interests. It is as much a matter of public concern to see that valid engagements are observed as it is to frustrate oppressive ones."

In *Matthews* v. *Barnes*, 155 Tenn. 110, 293 S. W. 993, 52 A. L. R. 1350, 1353, is this applicable statement: "While it would be difficult to prove specific injury in a case like this, we can well see how injury might result, and, realizing in advance that such competition would be injurious, the parties solemnly contracted against it." See also *Granger* v. *Craven*, 159 Minn. 296, 199 N. W. 10, 52 A. L. R. 1356.

■ The remaining contentions of the plaintiff have little substance. He argues that the Uniform Partnership Act does not authorize the inclusion of a restrictive provision of this kind in the partnership certificate; *i.e.*, that the things required by § 50-45 to be stated in the certificate are exclusive and no other agreements may be inserted. We find no reason in the Act or elsewhere why this should be true and the only authority to which we have been cited holds otherwise. *Lanier* v. *Bowdoin*, 282 N. Y. 32, 24 N. E. 2d 732. See also 68 C. J. S., Partnership, § 469, p. 1021.

After the partners had themselves agreed to dissolve the partnership by the writing of September 2, 1954, the Corporation Court of the City of Norfolk, on March 17, 1955, ordered that the certificate of limited partnership be cancelled. This was done on the petition of the plaintiff alleging that by virtue of §§ 50-67 and 50-68 he was entitled to have the certificate cancelled of record. Section 50-67 provides that "The certificate shall be cancelled when the partnership is dissolved or all limited partners cease to be such." The court proceeding simply made the cancellation a matter of record and could not have the effect of destroying the agreement of the parties with respect to their conduct and obligations after the dissolution occurred.

■ Finally, the plaintiff contends that the Finleys released William Rueger, III, one of the limited partners, from the obligations of the restrictive covenant and that thereby the plaintiff was also released. A sufficient answer is that Rueger was not released. Rueger requested permission from the Finleys to go to work for an agency in Norfolk, telling them what he expected to do there and

promising that he would not solicit any of their business or do anything to harm them in any way. He was told that they could not release him from the contract, but they later said to him that as long as he did what he expected to do and would not do anything to hurt their business, they would not be disposed to enforce the contract against him. Such an arrangement did not have the effect of releasing the plaintiff from his own independent obligation under the contract. Such permission could in no way prejudice the plaintiff or affect his obligation to abide his own agreement. *Cf.* 76 C. J. S., Release, § 49, p. 678.

The cause was correctly decided and the decree appealed from is

*Affirmed.*