RALPH K. VANLANDINGHAM, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Van Landingham v. Commissioner
Docket No. 34883-84.
United States Tax Court
T.C. Memo 1987-66; 1987 Tax Ct. Memo LEXIS 62; 53 T.C.M. (CCH) 1; T.C.M. (RIA) 87066; February 2, 1987. *62 Petitioner sold his interest in an accounting partnership to his partner for $250,000. The agreement of sale provided that petitioner agreed to sell his "capital account" in the firm for $50,000 and his remaining interest in the firm "consisting of Vanlandingham's interest in all intangible assets including but not limited to the right to service all clients, noncompetition agreement and client files" for $200,000. Petitioner agreed to treat the $200,000 as ordinary income and the purchaser agreed to treat the sum as "ordinary deduction." Held: The $200,000 was to be paid for a covenant not to compete and payments with respect thereto were taxable as ordinary income to petitioner. B. Roland Freazier, Jr.,Gary S. Cook and C. Richard Davis, for the petitioner. Scott Anderson, for the *63 respondent. DRENNEN
MEMORANDUM OPINION DRENNEN, Judge: Respondent determined deficiencies in Petitioner's Federal income tax and additions to tax as follows: Income Tax
Additions to Tax
Year
Deficiency
Sec. 6651(a) [1]
Sec. 6653(a)
June 30, 1980
$2,609.41
$130.47
$2,521.40
June 30, 1981
10,085.60
504.28
This case was submitted fully stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Facts related herein were stipulated by the parties or are derived from the stipulated exhibits. Petitioner filed U.S. Individual Income Tax returns for fiscal years ended June 30, 1980 and 1981, with the Memphis Service Center on February 23, 1981 and June 7, 1982, respectively. After concessions, [2] the only remaining issue in this case is whether certain proceeds petitioner received from the sale of his interest in an accounting partnership are ordinary income or *64 capital gain. On December 16, 1975, Ralph K. VanLandingham (hereinafter referred to as "petitioner") and Robert L. Braun (hereinafter referred to as "Braun"), organized a partnership known as VanLandingham, Braun & Company (hereinafter referred to as "the partnership") to provide accounting services to the general public. Partnership revenues were derived from the provision of accounting services to individuals and businesses located in Gloucester, Middlesex, Northumberland, King and Queen, and King William counties of Virginia. No services were provided in York, Richmond, Westmoreland, or Essex counties. On November 13, 1976, petitioner and Braun entered *65 into an agreement (hereinafter referred to as "sales agreement"), wherein petitioner agreed to sell his interest in the partnership to Braun for $250,000. Sale of the partnership closed on or about November 15, 1976. [3] The sales agreement provided that Braun would pay the purchase price by making a cash payment of $25,000 and executing, along with his wife, Cynthia, a note payable to petitioner for $25,000 due March 1, 1977, and notes payable to petitioner for $50,000 and $150,000, with regard to which principal payments of $3,033.33 and $10,000, respectively, were payable annually commencing July 1, 1977, and ending July 1, 1991. The sales agreement provided in relevant part as follows: 1. Braun agrees to purchase and VanLandingham agrees to sell the capital account of VanLandingham in the firm of VANLANDINGHAM, BRAUN & COMPANY for the sum of FIFTY THOUSAND AND NO/100 DOLLARS ($50,000.00), upon the terms and conditions of this Agreement as a whole, payable *66 as follows: * * * 2. Braun agrees to purchase and VanLandingham agrees to sell the remaining interest of VanLandingham in VANLANDINGHAM, BRAUN & COMPANY, consisting of VanLandingham's interest in all intangible assets including but not limited to the right to service all clients, noncompetition agreement and client files, for the sum of TWO HUNDRED THOUSAND and no/100 DOLLARS ($200,000.00), upon the terms and conditions of this Agreement as a whole, payable as follows: * * * 3. VanLandingham agrees to treat the sum of TWO HUNDRED THOUSAND and no/100 DOLLARS ($200,000.00) as ordinary income and Braun agrees to treat the sum as ordinary deduction. 4. The parties declare that these values were determined in good faith as the result of arm's length bargaining. The parties make the foregoing allocation of purchase price to the capital account of VanLandingham in VANLANDINGHAM, BRAUN & COMPANY, ($50,000.00), and VanLandingham's share in the noncapital assets in VANLANDINGHAM, BRAUN & COMPANY, ($200,000.00), with the knowledge and understanding that it will be used by Braun and VanLandingham for income tax purposes. * * * 21. Each of the parties hereto agrees that they have *67 received independent advice and counsel concerning the sale of the partnership business and the preparation of this Agreement and its terms and conditions herein contained. The sales agreement also contained what is commonly referred to as a "covenant not to compete" or "noncompetition clause" wherein petitioner agreed i) not to provide accounting services, for a period of five years, within the Virginia counties of Gloucester, Matthews, Middlesex, York, King William, King and Queen, Lancaster, Northumberland, Richmond, Westmoreland, or Essex; ii) not to accept employment from any individual or association who was a client of the partnership as of October 22, 1976; and iii) not to solicit clients within the above mentioned counties for a period of five years. If petitioner were to breach the covenant, Braun would be entitled to obtain injunctive relief and/or monetary damages plus attorney's fees. Prior to the sale, petitioner accompanied Braun on visits to major clients with whom Braun had little contact in order to personally recommend to them that Braun handle their accounting matters. Petitioner also sent out letters to all partnership clients in which he endorsed Braun's *68 abilities as an accountant. The $25,000 cash payment called for in the sales agreement was paid by Braun to petitioner on November 15, 1976. The $25,000 note due March 1, 1977, was paid in full by Braun on or before March 1, 1977. Annual payments were made on the $50,000 and $150,000 notes, which constituted the remaining proceeds from the sale of petitioner's interest in the partnership, on July 1, 1977, July 1, 1978, and July 1, 1979. On June 28, 1980, petitioner entered into a second agreement (hereinafter referred to as the "second agreement") with Braun, Eric R. Braun (hereinafter referred to as "Eric Braun") [4] and Cynthia Braun. The second agreement made reference to the November 1976 agreement and stated that the parties "hereto" are desirous that VanLandingham and Braun be relieved and released from any and all restrictions and allegations contained in said agreement and that the notes mentioned therein be assigned to Eric R. Braun. The parties *69 thereafter agreed; in pertinent part: Eric R. Braun shall execute two notes payable to VanLandingham, the first note in the amount of $21,750.00 payable on or before June 30, 1980, the second note in the amount of $53,250.00 payable on or before July 31, 1981. [5] Upon execution of these notes VanLandingham agreed to assign to Eric Braun all his rights in the notes provided for in the 1976 agreement, and simultaneously to deliver the assigned note to Eric Braun. It also provided "The party of the first part (VanLandingham) agrees to treat the payment of $75,000 * * * as capital gains and not as ordinary income." And finally, VanLandingham and Robert Braun released each other from all of the terms and allegations of the November 13, 1976 agreement. In accordance with the second agreement, Eric Braun executed and delivered to petitioner notes in the amounts of $21,750 due on or before June 30, 1980, and $53,250, due on or before July 31, 1981 (hereinafter respectively referred *70 to as the "June 30, 1980 note" and the "July 31, 1981 note"). During petitioner's 1980 fiscal year, Eric Braun paid petitioner $21,750 in satisfaction of the June 30, 1980 note. During petitioner's 1981 fiscal year, Eric Braun paid petitioner $53,250 in satisfaction of the July 31, 1981 note. Because of "domestic problems," petitioner moved to North Carolina several months after the sale of his interest in the partnership where he accepted employment with an accounting firm. Subsequently, petitioner moved to Whitestone, Virginia and then returned to Gloucester, Virginia in October 1982, at which time he reestablished an accounting practice there. On February 23, 1981, petitioner filed his Federal income tax return for fiscal year ended June 30, 1980 and on June 7, 1982 filed his return for fiscal year ended June 30, 1981 with the Internal Revenue Service Center, Memphis, Tennessee. Petitioner reported the $21,750 payment and the $53,250 payment he received from Eric Braun as capital gain on his Federal income tax return for the 1980 and 1981 fiscal years, respectively. On July 11, 1984, respondent sent to petitioner a statutory notice of deficiency in which he determined that *71 the payments represented ordinary income to petitioner. [6] The sole issue for decision is whether the $21,750 and $53,250 payments petitioner received from Eric Braun in the 1980 and 1981 fiscal years are ordinary income or capital gain. *72 Proceeds from the sale of an interest in a business are taxed to the seller as capital gain or ordinary income based upon the nature of the assets sold. Proceeds are treated as capital gain with respect to that portion of the purchase price allocable to capital assets of the business. Proceeds allocated to intangible assets such as goodwill are taxable as capital gain. Proceeds allocated to covenants not to compete are taxable as ordinary income. Ullman v. Commissioner,264 F.2d 305 (2d Cir. 1959) affg. 29 T.C. 129 (1957). Frequently buyer and seller negotiate characterization of the business assets and state the resulting allocation in the document governing the sale. Generally, the seller wishes as little of the purchase price as possible to be allocated to the covenant not to compete since payments received by the seller for the covenant are treated as ordinary income. Conversely, the buyer wishes more of the purchase price to be allocated to the covenant not to compete because the buyer is thereby entitled to deduct, by way of amortization, that part *73 of the purchase price allocated to the covenant. In this case petitioner treated the proceeds received from Eric Braun's payment of the June 30, 1980 note and the July 31, 1981 note as capital gain. In support thereof, petitioner argues that none of the proceeds are allocable to the covenant not to compete because: i) the covenant is ancillary to the sale of goodwill under the sales agreement and is not severable therefrom; and ii) the covenant is unenforceable under the laws of Virginia. Therefore, petitioner concludes, sales proceeds should be allocated entirely to goodwill, and other intangible assets capital in nature, producing capital gain when sold. Respondent argues the sales agreement clearly allocated the sales proceeds to the covenant not to compete and other noncapital items; that the allocation was the result of armslength bargaining by knowledgeable parties; and absent "strong proof" to the contrary [7] the allocation should be given weight for tax purposes. For reasons cited below, we agree with respondent. *74 We shall first consider enforceability of the covenant not to compete under the laws of Virginia. Petitioner cites the Virginia Supreme Court case of Meissel v. Finley,198 Va. 577, 95 S.E. 2d 186 (1956), as establishing the standard by which such covenants are tested for enforceability under Virginia law. [8] That court stated the authorities on enforceability of noncompetition clauses constitute "a vast sea out of which one could fish out any kind of strange support for anything, if he lives so long" and further that "each case is to be determined on its own facts." The Meissel court then stated a three-part test by which enforceability of such covenants is to be measured. The test asks the questions (1) is the covenant "no greater than necessary to protect the (buyer) in some legitimate business interest;" (2) is the covenant "not unduly harsh and oppressive in curtailing (the seller's) legitimate efforts to earn a livelihood;" and (3) is the covenant "sound public policy." 95 S.E. 2d at 188. *75 By applying the above standard we find the covenant not to compete is enforceable under the laws of Virginia. [9] Braun's "business interest" underlying the covenant not to compete was preservation of the income stream generated by the partnership. The purpose of the covenant was to protect that income stream by preventing petitioner from providing competing services in the same general area as existing partnership clients. The covenant did prevent petitioner from providing accounting services in four counties where the partnership did not then have clients. The four additional counties are York, Richmond, Westmoreland and Essex. However, we find it reasonable for Braun to protect an area including a limited number of additional counties in close physical proximity to existing clientele. Each additional county is contiguous to, or surrounded by, counties with existing clientele. Westmoreland, Richmond and Essex counties are nestled between Northumberland, Middlesex and King and Queen counties. York county is directly across a relatively small inlet of the Chesapeake Bay from Gloucester County. *76 From the standpoint of petitioner, we find the covenant was not "unduly harsh and oppressive." Petitioner offers no evidence, nor even asserts, that the covenant created hardship or that petitioner disagreed with its application except as to its impact on his Federal tax liability. Without any sign of misgiving, petitioner corresponded with all partnership clients and even visited major clients to recommend that Braun handle their accounting matters. Petitioner moved to North Carolina because of domestic problems. There is no evidence to suggest that the move was prompted by an inability to make a living due to enforcement of the covenant. Under these circumstances, enforcement of such a covenant negotiated at arms length, reasonably limited in geographical area and duration is "sound public policy." The court stated in Meissel,supra at 191, "While the law frowns upon unreasonable restrictions, it favors the enforcement of contracts intended to protect legitimate interests. It is as much a matter of public concern to see that valid engagements are observed as it is to frustrate oppressive ones." We turn now to petitioner's arguments that the allocation of the purchase *77 price in the sales agreement of 1976 was not to the covenant not to compete, but to a group of intangible assets including "the right to service all clients, noncompetition agreement and client files." Petitioner follows with the argument that this was intended to mean "goodwill" and that the covenant not to compete was ancillary to the goodwill and non-severable therefrom. We cannot accept these arguments particularly in light of the fact that although a specific allocation of the purchase price was made between two different groups of assets, one of which was clearly a capital asset, no mention was made of goodwill. Goodwill in a generic sense was probably intended to be included but we think it is reasonable to assume that as between these two parties, Braun was much more interested in protection from competition from the founder of the firm than the goodwill which the firm might have enjoyed and which it would probably retain in any event. It is clear from the structure of the agreement that the two parties, both of whom undoubtedly had some familiarity with tax law, were both conscious of the tax implication of the allocation made. This is emphasized by the statements in the *78 agreement that the "values were determined in good faith as the result of arms length bargaining," that VanLandingham "agrees to treat the sum of * * * ($200,000) as ordinary income and Braun agrees to treat the sum as ordinary deduction," that "The parties make the foregoing allocation of purchase price to the capital account of VanLandingham in * * * (the firm) and VanLandingham's share in the non-capital assets (underscoring added) in * * * (the firm) with the knowledge and understanding that it will be used by Braun and VanLandingham for income tax purposes," and that each party agreed that they had received independant advice and counsel concerning the sale and the preparation of this agreement. In addition the agreement specifically provided that if Braun should breach the agreement in any manner the non-competition clause of the agreement "shall become null, void and of on further effect." We conclude that the terms of the contract clearly express the intention of the parties that the $200,000 was allocated to the agreement not to compete and the rights ancillary thereto. We find that under the circumstances existing at the time the agreement was executed the allocation *79 was realistic, particularly so far as Braun was concerned, had independent significance, and could be related to economic reality. Furthermore, respondent has so determined and petitioner has the burden of proving error in this determination. Petitioner has failed to carry even this burden, to say nothing of producing "strong proof" that the $200,000 was not allocated and not intended to be allocated to the covenant not to compete, as would be required by Ullman v. Commissioner,supra.
Petitioner does not claim the parties intended any allocation different from the one stated in the agreement. Petitioner did not take the witness stand in support of such a proposition nor did he call Braun or any third party who advised Braun or petitioner in structuring the sales agreement. The rule is well established that the failure of a party to introduce evidence within his possession which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable. Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158 (1946), *80 affd. 162 F.2d 513 (10th Cir. 1947). We also find the substitute agreement [10] entered into June 28, 1980, between petitioner, Robert Braun and his wife Cynthia, and Eric R. Braun, supports our conclusion. In that agreement, executed at a time when the noncompetition agreement of 1976 had about a year and a half to run, the parties agreed that petitioner and Braun would each be released from any and all restrictions and obligations contained in the 1976 agreement, specifically including the noncompetition agreement, and that petitioner would assign to Eric Braun all rights in the $50,000 note and the $150,000 note given to petitioner by Braun under the 1976 agreement, in exchange for which Eric Braun would execute two new notes payable to petitioner on June 30, 1980, and July 31, 1981, [11] totaling $75,000. For some unexplained reason, petitioner specifically agreed to treat the payment of the $75,000 as capital gain and not as ordinary income; nothing was said with regard to the payor's treatment of the payments. Thus petitioner received $75,000 rather than the remaining approximately $160,000 due on the two notes that were assigned, which would have been payable *81 in installments up to 1991. Petitioner received no assets of the business. All that petitioner received in exchange for his forgiveness of $85,000 of the existing debt was $75,000 cash payable in slightly over one year, relief from his covenant not to compete, and a statement in writing that he agreed to treat the $75,000 as capital gain, rather than ordinary income as he had been reporting the payments on the notes that he received prior to the execution of the 1980 agreement. Of course we have no evidence with respect to why this 1980 agreement was made or the circumstances surrounding same, but our best interpretation of the facts extrapolated from the agreement itself is that petitioner was willing to in effect pay (or forego receipt) of $85,000 for the right to practice accounting in his old bailiwick one and one-half years before he could have otherwise, the right to receive the $75,000 within a year rather than over a period of 11 years, and an understanding in writing that he would report the $75,000 as capital gains. This could be taken to indicate that petitioner thought the covenant not to compete had considerable value independent of any goodwill. *82 Petitioner cites and relies on Horton v. Commissioner,13 T.C. 143 (1949); Estate of Melnick v. CommissionerT.C. Memo 1961-18; and Karan v. Commissioner319 F.2d 303 (7th Cir. 1963), affg. Estate of Melnick v. Commissioner,T.C. Memo 1962-129. We do not include here a summary of those cases because we find them factually distinguishable from the instant case. As petitioner argues, these cases stand for the proposition that an accountant can have goodwill which he can sell to a third party. However, unlike the instant case, the purchase agreements in those cases contained no allocation of the purchase price to the assets transferred. In this case the sales agreement specifically allocated the purchase price among two groups of assets, one of which was referred to as the "capital account" of Vanlandingham and the second of which was referred to as "VanLandingham's share in the noncapital assets in" the company. We will not, under the circumstances present in this case -- a clear allocation resulting from arms-length bargaining by knowledgeable parties -- second guess the stated allocation without strong proof to the contrary. *83 Decision will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, and in effect during the taxable years in question, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner concedes i) that the adjustment in the amount of $17,170.41 which respondent made with respect to his 1981 fiscal year gross income is correct; ii) that he is liable for the additions to tax pursuant to sec. 6651(a) for the 1980 and 1981 fiscal years for any deficiencies determined by the Court to exist with respect to income tax liabilities for those years (as stipulated); and iii) that he is liable for the addition to tax pursuant to sec. 6653(a) with respect to any deficiency for the 1981 fiscal year.↩
3. The sales agreement was signed and dated November 13, 1976. However, a cash payment of $25,000, receipt of which was acknowledged by the parties in the sales agreement, was not actually made until November 15, 1976.↩
4. The record is not clear whether Eric Braun is related to Robert L. Braun. In respondent's brief Eric Braun is referred to as "petitioner's father-in-law." Such relationship is immaterial to the issues before this Court.↩
5. The parties stipulated that the second note was due on or before July 31, 1981. The second agreement, however, stated the note was payable on or before June 30, 1980.↩ This note is not in evidence.
6. Ordinarily, assessment and collection of any tax for fiscal year 1980 under these circumstances would be barred by the statute of limitations. However, the statute of limitations is an affirmative defense which, pursuant to Rule 39, must be set forth in the pleadings. Petitioner did not plead the statute of limitations as a defense in his pleadings nor has he mentioned the same in any proceeding or correspondence with this Court. Where a taxpayer fails to plead the expiration of the statute of limitations as an affirmative defense in his petition, the issue is not properly before this Court. Dale v. Commissioner,↩ T.C. Memo. 331-1981. We are unable to ascertain whether any of the exceptions to the statute of limitations which extend the Commissioner's authority to assess and collect tax beyond the normal three year limit apply in this case.
7. Respondent asks the Court to adopt the rule of Danielson v. Commissioner,378 F.2d 771 (3d. Cir. 1967), cert. denied 389 U.S. 858 (1967); that if the terms of the contract are clear and unambiguous, respondent has the right to bind the parties to those terms, unless proof is adduced which would be admissable in an action between the parties to the agreement to show unenforceability because of mistake, undue influence, fraud or duress. In the alternative, respondent asks the court to apply the rule of Ullman v. Commissioner,264 F.2d 305 (2d. Cir. 1959), affg., 29 T.C. 129 (1957); that when the parties to a transaction have specifically set out the covenants in the contract and have given them an assigned value, strong proof must be adduced by them in order to overcome that allocation. The "strong proof" rule has, in the past, been preferred by this Court, Baldarelli v. Commissioner,61 T.C. 44 (1973); Brauer v. Commissioner,74 T.C. 1134, 1142↩ (1980). The result would be the same whichever rule is applied in this case.
8. Meissel v. Finley,198 Va. 577, 95 S.E. 2d 186 (1956), does not address enforceability of a covenant not to compete in the context of a sale of a business, but does address such a covenant in the context of an employment contract. Some jurisdictions allow greater latitude in enforcing covenants not to compete relating to the sale of a business than similar covenants in employment contracts. See Dalrymple v. Hagood,246 Ga. 235, 271 S.E. 2d 149↩ (1980). Apparently Virginia makes no such distinction.
9. We draw this conclusion while noting this Court is not bound by state law in assessing tax consequences of such transactions. Fidler v. Commissioner,T.C. Memo. 1980-346↩.
10. This agreement was a stipulated exhibit with no objection from either party to its consideration in deciding this case. ↩
11. See fn. 5.↩