## CIRCUIT COURT OF LANCASTER COUNTY

Arrowhead Travel, Inc.

v.

Patricia D. Hinton
and Barbara Ann Deihl

January 4, 1991

By JUDGE JOSEPH E. SPRUILL, JR.

This is a suit brought by Arrowhead Travel, Inc., as employer, against Patricia D. Hinton and Barbara Ann Deihl, its former employees, for specific performance of an employment agreement and for damages for its breach. All Seasons Travel is also a defendant, against which Arrowhead seeks injunctive relief and damages for interference with Arrowhead's contractual rights under the employment agreements in question.

Hinton and Deihl each entered into separate but identical employment agreements with Arrowhead. In each, the employees agreed that the customer lists and records of Arrowhead were its sole and exclusive property, and the employees agreed not to directly or indirectly misappropriate or use for their benefit such lists or records; they, the employees Hinton and Deihl, agreed that such lists and records were confidential and proprietary and they would not make such information known to any person; and finally, they, the employees, agreed that they would not during their employment under this agreement or within three years thereafter, directly or indirectly, solicit or divert clients or customers of Arrowhead to any other travel agency. In consideration of these agreements, the employees were given employment and paid compensation, pursuant to the terms of the agreement, by Arrowhead.

Arrowhead now complains that Hinton and Deihl left its employment and went to work for a competitor, All Seasons, and have since sought to divert Arrowhead's customers to All Seasons. Arrowhead claims that its customer lists and records are a unique and valuable property right which its employees, Hinton and Deihl, expressly agreed not to misappropriate and that it is entitled to injunctive relief and damages.

All defendants demur. Hinton and Deihl, by Demurrer, claim that the employment agreements in question lack consideration, are unenforceable for vagueness, are unduly restrictive of defendants' freedom, and are contrary to public policy. Initially, we address these Demurrers.

In so doing, we identify first the relief that is being requested, which is to restrain defendants from appropriating confidential information or customer lists acquired during their employment with Arrowhead, and for damages if proof establishes that they have wrongfully done so.

Courts, in passing on these contracts, have employed three criteria: (a) Is the restraint, from the standpoint of the employer, reasonable in the sense that it is no greater than is necessary to protect the employer in some legitimate business interest? (2) From the standpoint of the employee, is the restraint reasonable in the sense that it is not unduly harsh or oppressive in curtailing his legitimate efforts to earn a livelihood? (3) Is the restraint reasonable from the standpoint of a sound public policy? *Meissel v. Fenley*, 198 Va. 577, 580 (1956).

The *Meissel* case involved a covenant not to compete. This is not an issue here. The freedom of defendants, Hinton and Deihl, to compete against Arrowhead, anywhere, is unchallenged.

Turning to the first of the three criteria established by *Meissel*, we consider the reasonableness of the restraint from plaintiff's standpoint. A customer base, also called goodwill, is clearly a property right of the employer, even though it may frequently have been acquired through the efforts of its employees. Courts have recognized this situation and have nonetheless allowed employers to protect their interests by a reasonable covenant when termination of employment creates a risk of appropriation of "goodwill." Case law in Virginia dealing with this issue appears to

uphold the employer's right to protect the goodwill of its customers from its employees' wrongful appropriation. *See University of Richmond Law Review*, volume 15, page 105, at pages 120-123. Customer lists are among numerous confidential business matters which employers have been allowed to protect.

The second element of the *Meissel* test is whether the conditions imposed on the former employees are unduly harsh or oppressive. In this determination, courts focus on duration and territorial scope of the restraint. The restraint in the agreements under consideration here provide for a three-year duration. In *Meissel*, a five-year proscription was upheld. Courts have enforced covenants running as long as ten years. We find the duration of three years not to be unreasonable.

The agreements in question do not provide for an area within which the restraint must be observed. Insofar as these agreements are concerned, the restraint is worldwide, a fact emphasized by defendants' counsel. covenants not to compete covering an area as large as the United States have been upheld. *See National Homes Corp. v. Lester Industries, Inc.*, 293 F. Supp. 1025 (W.D. Va. 1968). Here, the defendants can directly compete with Arrowhead in Kilmarnock, or anywhere else in the world, but are restrained from soliciting Arrowhead's customers, even if they be found in Albania. We hold that the overriding need to protect the employer's legitimate business interest requires a finding that a restraint of this nature is not unduly harsh or oppressive from the standpoint of the employees, especially when they are free to practice their trade wherever they choose, their only limitation being to refrain from soliciting their former employer's customers.

Finally, we consider the reasonableness and public policy implications of this type of restraint. Here, we must balance the protection of freedom to contract with the protection of freedom of trade. In weighing this balance, courts look at practical considerations, chiefly the direct effect that the restraint will have on the public if enforced. In this context, we cannot assume that the public will be adversely affected in any way by an enforcement of the restraint.

The issues here are distinguishable from the issues in *Alston Studios, Inc. v. Gress*, 492 F.2d 279 (4th Cir.

1974). In *Alston*, the employment agreement contained a covenant not to compete, without geographical limitations. Thus, the employee in *Alston* was curtailed in his efforts to earn a livelihood anywhere. This was deemed too broad a restriction to be enforceable. Here, Hinton and Deihl face no such restriction

For essentially the same reasons, we do not find that *Davis-Robertson Agency v. Duke*, 119 F. Supp. 931 (E.D. Va. 1953), or *Grant v. Carotok*, 737 F.2d 410 (4th Cir. 1984), apply here. Each of these cases deals with covenants not to compete which were deemed overly broad, either as to geographical area or in scope generally.

In *Blue Ridge Anesthesia v. Gidick*, 239 Va. 369 (1990), the Virginia Supreme court upheld a non-competition agreement wherein the geographical area was defined as "any territory serviced by Employer." My understanding of the facts in our case indicate even less of a restriction on employees' activities than the Court approved in *Blue Ridge*.

For these reasons, we hold that the Demurrers of Hinton and Deihl must be overruled.

A caveat here is in order. It is likely to be much easier to hold that these employees cannot solicit customers of Arrowhead than to identify who those customers may be. Simply because a customer may have used Arrowhead's services in the past does not necessarily mean that he remains one *ad infinitum*, or that such customer cannot, on his own, contact another agent, even one of the defendants, for services in the future. The restraint here is on solicitation of Arrowhead's customers and the revealing of confidential information belonging to Arrowhead, and nothing more.

As to the Demurrer of All Seasons Travel, the Bill of Complaint alleges that All Seasons has intentionally and tortiously interfered with Arrowhead's contract rights. If proven, this is a claim upon which damages may be based. Therefore, this Demurrer will also be overruled.