## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Mutual Funding, Inc., et al.

v.

Kevin B. Collins et al.

May 5, 2003

Case No. CH02-947

BY JUDGE WILLIAM H. LEDBETTER, JR.

The defendants, former employees of the plaintiffs, challenge by demurrer the sufficiency of the plaintiffs' pleadings, especially the allegations related to the enforceability of noncompetition and nondisclosure covenants that are the foundation of the suits.

### *Factual Background*

A demurrer is an objection to going further with litigation because no case has been stated by the party seeking relief. A demurrer says in effect, admitting all you say in your pleadings to be true, you are not entitled to relief in the form sought. It is well settled that a demurrer admits all facts well pleaded, facts that are impliedly alleged, and reasonable inferences that can be drawn from the facts alleged. *Thompson v. Skate America*, 261 Va. 121, 540 S.E.2d 123 (2001). Thus, the facts recited here are those set forth in the bill of complaint.

Mutual Funding is a Virginia corporation headquartered in Spotsylvania County. Its primary business is assisting local charities with fund drives. Precious Moments is a sister entity. It works with Mutual Funding by

providing portraits to contributors to the charities for which Mutual Funding raises money.

Defendants Collins, McMeniman, and Racette were employees of Mutual Funding in various capacities. Defendant Beamon worked as a portrait photographer for Precious Moments. All of them signed covenants not to compete and confidentiality agreements.

Racette quit as Fredericksburg general manager in December of 2001. Collins resigned as regional manager in June of 2002. McMeniman resigned as Richmond general manager in August of 2002. Beamon left in November of 2002.

In July of 2002, Collins' wife created a Kentucky corporation, defendant Integrity Fundraising, Inc., and three months later obtained a certificate to do business in Virginia.

Collins, McMeniman, and Beamon now work for Integrity Fundraising, competing with Mutual Funding for business in the same territory.

Racette is treasurer of Lake Anna Rescue, Inc., a Fredericksburg-area charitable entity that had been a customer of Mutual Funding. In October of 2002, Lake Anna Rescue discontinued its relationship with Mutual Funding and signed on with Integrity Fundraising.

### Status of the Case

In a thirty-page pleading containing 125 numbered paragraphs, the plaintiffs state the facts summarized above and allege that the individual defendants have breached their noncompetition covenants and confidentiality agreements with Mutual Funding, that the individual defendants have been unjustly enriched by receiving compensation from Mutual Funding, that the corporate defendant is tortiously interfering with the business of Mutual Funding and with its contract expectancy with Lake Anna Rescue, and that "two or more" of the defendants have conspired to injure the business of Mutual Funding in violation of Virginia Code § 18.2-499 et seq. The plaintiffs seek various forms of relief, including injunctions and monetary damages.

The defendants filed a demurrer and special plea. The demurrer was argued on April 21, 2003. The court took the matter under advisement.

## Covenants Not to Compete

The defendants contend that the noncompetition covenants are facially invalid and unenforceable. Because the covenants are attached as exhibits to the bill and referred to in the bill, they are a part of the pleading (Rule 1:4(i)) and can be considered on demurrer.

At early common law, covenants not to compete were void as against public policy. In those days, a person could not pursue a trade or craft without being apprenticed. Once apprenticed, a covenant not to engage in that trade, especially in a non-mobile society, would effectively deny a person the ability to earn a living and would make him a public charge. See 54 Am. Jur. 2d, *Monopolies*, § 511.

Through a succession of decisions, the rule has been substantially modified so that today a noncompetition covenant will be enforced if it is supported by consideration, ancillary to a lawful arrangement such as an employment contract, and reasonable under multifaceted tests fashioned by the courts. See 12B M.J., *Master and Servant*, § 6. "That restrictive covenants ... which reasonably protect the employer's business and are incident and ancillary to the contract of employment and limited as to area and duration are enforceable in equity is not open to question." *Worrie v. Boze*, 191 Va. 916, 62 S.E.2d 876 (1951). In Virginia, reasonableness is determined by reference to the criteria explained in *Foti v. Cook*, 220 Va. 800, 263 S.E.2d 430 (1980).

Nevertheless, the appellate courts continue to remind us that covenants not to compete are restraints on trade and thus are not favored. The employer bears the burden of showing that the restraint is reasonable and no greater than necessary to protect its legitimate business interests. The restraint must not be unduly harsh or oppressive in curtailing the employee's legitimate efforts to earn a living. The restraint must be reasonable in light of sound public policy. Finally, the language of the covenant will be strictly construed and, if ambiguous, it will be construed in favor of free competition. *Richardson v. Paxton Co.*, 203 Va. 790, 127 S.E.2d 113 (1962); *Motion Control v. East*, 262 Va. 33, 546 S.E.2d 424 (2001); *Modern Environments v. Stinnett*, 263 Va. 491 (2002).

The area covered by the covenants is a sixty-mile radius from each of four cities where Mutual Funding has bases of operations: Richmond and Fredericksburg in Virginia, and Pasadena and Frederick in Maryland. The duration of the covenants is three years.

Neither the area nor the duration is unreasonable on the face of the covenants. See, e.g., *Meissel v. Finley*, 198 Va. 577, 95 S.E.2d 186 (1956); *Modern Environments, supra*.

The defendants argue that the language of the covenants is overbroad, similar to that in *Motion Control, supra*. The covenants prohibit each employee from competing "directly or indirectly" with Mutual Funding and, in the case of Beamon, with Precious Moments.

The plaintiffs' pleading sets forth with precision the nature of the business, fundraising for local charities, that is the subject of the covenant. This is quite different from the covenant in *Motion Control*, which prohibited employees from engaging in "*any* business *similar to the type* of business conducted by [the employer] . . ." including "*but not limited* to" any business that "designs, manufactures, sells, or distributes motors, motor drives, or motor controls." (Emphasis added.) Those covenants were found to impose restraints that exceeded those necessary to protect the employer's legitimate business interests.

The court is of the opinion that the noncompetition covenants at issue in this case are not unenforceable *per se*. They appear to be reasonable as to area and duration. They appear to limit the restraint to the particular business of Mutual Funding, fundraising for charities. Nothing on the face of the covenants indicates that they are unduly harsh or excessive. Therefore, the demurrer is overruled as it relates to the covenants that are attached as exhibits to the bill of complaint.

### Racette's Competition

Racette is treated separately in the bill because he is not employed by defendant Integrity Fundraising. The allegations about Racette relate to his position as treasurer of Lake Anna Rescue.

Taking the pleadings as a whole, it is difficult to understand how Lake Anna Rescue could compete with Mutual Funding. In fact, Mutual Funding used to raise money for Lake Anna Rescue. Lake Anna Rescue does not engage in fundraising except, perhaps, for itself. Consequently, it is illogical to suggest that Racette, working for Lake Anna Rescue, could be "competing" with Mutual Funding.

Further, as the defendants observe in their demurrer, there is no allegation in the bill that Racette works for Lake Anna Rescue. He is the treasurer. Since Lake Anna Rescue is a charity, the treasurer of that organization could very

well be a volunteer. How does a volunteer treasurer of a charity "compete" directly or indirectly with Mutual Funding?

The ground of the demurrer concerning Racette's breach of his noncompetition covenant will be sustained, with leave to amend.

## Confidentiality Agreements

The defendants contend that the allegations regarding the individual defendants' nondisclosure agreements are insufficient. Nothing in the pleading, they say, sets forth the nature or content of the information allegedly shared with Integrity Fundraising, and thus it is not clear whether the information is "sensitive and proprietary."

Even without a noncompetition covenant or any other written agreement, a former employee cannot compete with his former employer by using confidential information or trade secrets obtained from the former employer while he worked there. See 12B M.J., *Master and Servant*, § 6.

Reading the plaintiffs' bill as a whole, it is obvious that the confidential information referred to in Count II consists of methods and procedures relating to solicitation of funds for local charities. The details can be obtained by discovery. The pleading is adequate. Therefore, the demurrer to the portions of the bill associated with the confidentiality agreements will be overruled.

## Unjust Enrichment

The defendants contend that the claim of unjust enrichment is fatally defective. The court agrees.

In Count IV, the plaintiffs allege that the individual defendants received compensation as employees and now must repay that money because of their post-employment misconduct.

Unjust enrichment involves the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected. See *Black's Law Dictionary* (7th ed.) p. 1536. It also applies to similar circumstances where one holds money that equitably belongs to another. See, e.g., *Norfolk v. Norfolk County*, 120 Va. 356, 91 S.E. 820 (1917).

This doctrine simply does not fit the facts alleged here. It has no application to these circumstances. Accordingly, the demurrer to the plaintiffs' claim of unjust enrichment will be sustained and the claim will be stricken.

## *Tortious Interference*

The plaintiff's claim that Integrity Fundraising tortiously interfered with their business and with a contract expectancy by causing Lake Anna Rescue to terminate its relationship with Mutual Funding. The defendants demur to these claims on the grounds that the allegations are insufficiently detailed. Reading the pleading as a whole, the basis of these claims, Counts V and VI, are obvious. Therefore, the demurrers will be overruled.

## *Conspiracy*

The defendants demur to the claim involving conspiracy to injure a trade, business, or profession.

In their bill, the plaintiffs allege that "two or more" of the defendants conspired to injure Mutual Funding's business intentionally, purposefully and without justification. No activity or conduct is described, except for a reference to a solicitation letter as an "example of activities" underlying the claim.

The court agrees with the defendants that a conspiracy claim, made under Virginia Code §§ 18.2-499 and 18.2-500, is inadequate unless it sets forth some core facts to support the claim. An "example," consisting of an attached letter, does not suffice.

Further, the court agrees with the defendants that an allegation that "one or more" of them engaged in the conspiracy is woefully inadequate. No single defendant is put on notice whether he is a target of the claim and, if so, what he did to come within the scope of the claim.

At arguments on April 21, counsel for the plaintiffs acknowledged that the "one or more" language is bothersome, but assured the court that things would become clearer after discovery is conducted.

One does not file a claim, especially one as serious as this, with no explainable factual basis, intending to "flesh it out" during discovery. Accordingly, the demurrer to Count VII will be sustained with leave to amend.

## *Injunctive Relief*

In Count VIII the plaintiffs seek a permanent injunction. In Count IX, the plaintiffs ask for a preliminary injunction.

For a variety of reasons, the defendants demur to the counts seeking injunctive relief.

Actually, these counts are not really assertions of claims. Rather, they are forms of relief sought on account of the facts alleged elsewhere in the pleading. They should be among the prayers on page 27 of the pleading instead of set forth as counts.

There is no doubt that equity can enjoin the sort of misconduct alleged by the plaintiffs. The facts alleged, if proven, would justify such relief. Thus, the counts requesting injunctive relief are not demurrable.