## Richmond

### Victor F. Foti

v.

### William A. Cook, Jr., James M. Dillon, Lacy W. Hanson, Isaac O. Perkins, R. David Rotty, Joseph B. Wright, and Glenn D. McMillion, t/a Andrews, Burket & Co.

February 29, 1980.

Record No. 780207.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Poff, and Compton, JJ.

*Charles D. Fox, III (John Davis Feldmann; Hunter, Fox, & Wooten,* on briefs), for appellant.

*William R. Rakes; John S. Edwards (Gentry, Locke, Rakes & Moore,* on brief), for appellees.

HARRISON, J., delivered the opinion of the Court.

Victor F. Foti, William A. Cook, Jr., James M. Dillon, Lacy W. Hanson, Isaac O. Perkins, R. David Rotty, Joseph B. Wright, and Glenn D. McMillion, Certified Public Accountants, were partners in the Roanoke accounting firm of Andrews, Burket and Company (the Andrews firm). On August 1, 1976, Foti submitted his voluntary

resignation from the firm, and it was accepted the following day. A dispute thereafter arose between the parties, Foti claiming that his status as a partner had been terminated involuntarily as the result of certain action taken by the remaining partners in the firm subsequent to his resignation, and that he was no longer bound by the terms of their partnership agreement. This action precipitated a motion for a declaratory judgment by the remaining partners to establish whether the agreement was valid and applicable and whether Foti was in violation thereof. Foti noted this appeal from an adverse judgment by the court below.

The controversy arises from a provision in the Articles of Partnership of Andrews, Burket & Co., which provides, in substance, that in the event a partner voluntarily withdraws from the firm and during the twenty-four months following such withdrawal performs accounting services for clients of the partnership, such partner shall pay to the partnership an amount equal to one-third of each year's fee collected from such clients for a period of three years.[1]

Foti was an associate of the Andrews firm from 1959 to 1969. In 1969 he became a senior partner, and at that time first entered into the partnership employment agreement which contained a postemployment restrictive covenant similar to the one in issue. From time to time as additional partners were admitted to the firm, or as the partnership shares were modified, the contract was revised and the agreement redated and reexecuted. The agreement in dispute was executed in May 1975, and was in effect at the time Foti resigned. In his letter of resignation Foti indicated his intention to comply with the partnership agreement and wrote, "I have not solicited any of our present clients and don't intend to do so."

---

[1] *ARTICLE VI*, section VI.1(iv) of the partnership agreement reads:

(iv) During the twenty-four months immediately following the termination of his membership in the partnership, unless such termination is involuntary under the provisions of ARTICLE V.2 of this agreement, a partner will not offer to perform or perform services as a Certified Public Accountant or Public Accountant to any client of the partnership. A partner violating this sub-section shall pay to the partnership an amount equal to one-third of each year's fee collected for a period of three years. Such amount is due when collected from the client by the former partner. Nothing herein shall be construed as preventing a partner, whose membership in the partnership is terminated, from performing bookkeeping or accounting services as a full time employee of any person, firm or corporation which is not engaged in the business of providing bookkeeping or accounting services for others. The benefits of this subsection shall inure to and be enforceable by any partnership or other organization into which or with which the partnership of ANDREWS, BURKET & CO., is merged or consolidated.

After his resignation was accepted by the partners, Foti declined invitations to attend a meeting of the firm's management partners on August 6, 1976, and the partners' monthly meeting on August 17, 1976. The partners testified that following the receipt of Foti's resignation they took steps to transfer Foti's responsibility for certain of the firm's clients to the remaining partners; that it was decided that Foti should direct his efforts during his remaining time as a partner to transferring to the other partners responsibilities that he had for the firm's clients; and that in order to carry out this program Foti should take a partner or an employee of the firm with him whenever he had any occasion to visit clients. They also decided that all the firm's working papers should remain in the office files because of the firm's continuing liability for such work. They agreed, however, that Foti would have access to the files and have the privilege of examining their contents in the offices of the firm.

Foti testified that subsequent to his resignation the remaining partners of the firm held several meetings, of which Foti had no notice, and at these meetings decisions were made which adversely affected his interests in the partnership. He complained specifically of the decisions made in the August 17, 1976 meeting that he was not to accumulate any chargeable time for work done for clients, that he was not to remove any working papers from the office of the firm, and that he was not to meet with any clients unless accompanied by another member of the firm. Foti alleges that these acts on the part of the remaining partners constituted an involuntary termination of his status as a partner.[2] He notified the firm of this position by letter dated August 30, 1976. In September 1976, Foti became a member of the accounting firm, R. L. Persinger and Company, whose name was later changed to Persinger, Foti and Company.

The partners of the Andrews firm never voted to expel Foti pursuant to Article V, Section V.2 of the partnership agreement, and Foti continued to receive his partnership "draws" until the end of September 1976, when his association with Persinger commenced. During the month of September 1976, Foti performed accounting services for

---

[2] ARTICLE V, section V.2 of the partnership agreement reads:

If the partners (other than the partner with respect to whom action is under consideration) determine by vote that it would be to the best interest of the partnership, because of a partner's disability, incapacity, misconduct or neglect of duty, or any other reason, for a partner to retire or withdraw from the partnership, he shall be requested to retire or withdraw as the case may be. A partner to whom such request is directed shall be considered to have retired or withdrawn as of the last day of the month requested.

clients of Andrews, Burket & Co., but billed these clients through his new firm.

Upon a trial of the case a jury was impaneled to try the sole factual issue of the voluntariness of Foti's withdrawal from his former accounting firm. After the evidence had been submitted, the trial court granted summary judgment for the Andrews firm, finding no issue of material fact as to the voluntariness of Foti's withdrawal. The court further held that the partnership covenant in question was reasonable and valid and that Foti was liable thereunder. The parties stipulated the identity of the clients of the Andrews firm for whom Foti, or his new accounting firm, had performed accounting services during the first year after Foti's withdrawal. Upon this stipulation and the evidence the court entered judgment against Foti in favor of the appellees in the amount of $40,264.31. This sum represents payment required under the partnership covenant for the year ending September 30, 1977.

Odell Hamden, a partner in the firm of Persinger, Foti and Company, testified that his firm was then performing accounting work for a number of clients who were formerly clients of the Andrews firm. He said that Foti had contact with some of these clients during the month of September 1976, and prior to the time Persinger and Foti officially went into partnership. Hamden was aware of the provisions of the Andrews partnership contract and said that any payments that Foti would have to make under this agreement would be made by the Persinger firm. Specifically the witness said: "Mr. Foti . . . made the observation that he wanted to live up to his commitments, and we said that if he had any obligations as a result of this action that we expected to honor them."

The trial judge found as a matter of law that Foti's withdrawal from the Andrews firm was voluntary. There is ample evidence to support this finding. It is conceded that Foti was a respected and valued partner of the Andrews firm and that his resignation was neither solicited nor welcomed by the firm. While the actions taken by the remaining partners at the August 17, 1976 meeting may have been prompted by self-interest, and amounted to an effort to retain its clients whom Foti may have attracted to the firm, or its clients who had been served by Foti through the years, such actions were not unreasonable. The restrictions placed on Foti did not constitute a dismissal of Foti as a partner. For obvious reasons the firm desired to retain its clients and therefore took action to assure that Foti would not use his remaining days with the firm to solicit clients or incur good will for his new firm.

■ The dispositive question concerns the reasonableness of the restrictive covenant. The principles which control our decision, and the authorities pertinent thereto, are fully set forth and explicated in *Richardson* v. *Paxton Company,* 203 Va. 790, 127 S.E.2d 113 (1962), *Meissel* v. *Finley,* 198 Va. 577, 95 S.E.2d 186 (1956), and *Worrie* v. *Boze,* 191 Va. 916, 62 S.E.2d 876 (1951). *See also Linville* v. *Servisoft of Virginia,* 211 Va. 53, 174 S.E. 2d 785 (1970). We have held repeatedly that whether restrictive covenants in an employment contract will be enforced in equity depends upon the facts in the particular case, and that the burden is upon the plaintiff to prove the validity of the restraint. Counsel for Foti agrees that the three-part test for determining the reasonableness of restrictive covenants, recited in *Meissel* v. *Finley, supra,* 198 Va. at 580, 95 S.E.2d at 188, quoting from Judge Dobie in *Welcome Wagon, Inc.* v. *Morris,* 224 F.2d 693, 698 (4th Cir. 1955), is as follows:

> "**Modern courts have usually, in passing on these contracts, employed three criteria: (1) Is the restraint, from the standpoint of the employer, reasonable in the sense that it is no greater than is necessary to protect the employer in some legitimate business interest? (2) From the standpoint of the employee, is the restraint reasonable in the sense that it is not unduly harsh and oppressive in curtailing his legitimate efforts to earn a livelihood? (3) Is the restraint reasonable from the standpoint of a sound public policy?"

■ A court must give effect to the intention of the parties as expressed in the language of their contract, and the rights of the parties must be determined accordingly. We find the contract in the instant case to be clear and unambiguous, and we have no difficulty in ascertaining the intent of the parties. Simply stated, Foti and his partners in the Andrews firm agreed that if any partner voluntarily terminated his employment in the partnership he would not, during the ensuing twenty-four months, perform or offer to perform accounting services for any client of the partnership. The restrictive covenant was placed in the contract for the benefit of Foti and the other partners. It was designed to protect the legitimate business interests of the firm and to prevent the use by a withdrawing partner of confidential information to the disadvantage of the partnership.

Foti and his partners understood the value to the firm of its list of clients, of the data concerning the clients' various businesses, of the information collected during the making of previous audits, of the

financial responsibility of the firm's clients and their promptness in paying accounting fees, and of such other information, some of a confidential nature, about clients as would normally be obtained by a partner in an accounting firm. Foti, being a senior partner, was privy to all the information gathered by all the partners, associates, and employees in the firm in connection with clients serviced by Andrews, Burket & Co. The covenant was designed to protect the partners from the injurious consequences which could flow from the use of confidential information and knowledge acquired by the departing partner in the course of his association with them.

■ To determine whether a restrictive provision is unreasonably harsh and oppressive, it is relevant to consider the parties involved, their respective positions, and the circumstances of the transaction. We are not dealing here with employer and employee but with senior partners who stood upon equal footing at the bargaining table. The plaintiff in this case had been identified with the Andrews firm for seventeen years, ten years as an associate, and seven years as a senior partner. During this time he had repeatedly entered into written agreements with his other partners, promising that he would not, if he left the partnership, perform or offer to perform accounting services for any client of the partnership, and that if he did so, he would pay the partnership a percentage of the fees collected from such a client. As Mr. Justice Buchanan observed in *Meissel* v. *Finley, supra,* 198 Va. at 583, 95 S.E.2d at 191: "It is to be presumed that in that time and experience he was himself convinced that the restrictions he and his associates agreed on were reasonable and advisable."

Important to our decision here is the fact that the partnership agreement does not prohibit Foti from practicing his profession in Roanoke or elsewhere, or from practicing in an office next door to Andrews, Burket & Co., or in the same building. In a case strikingly similar to the one under review, *Ebbeskotte* v. *Tyler,* 127 Ind. App. 433, 441, 142 N.E.2d 905, 909 (1957), the court said:

> It is interesting to note that in the present case at bar the appellant did not seek to enjoin the appellee from practicing or working as an accountant in Mishawaka, Indiana and vicinity or elsewhere, but merely sought to enjoin the appellee from soliciting and accepting employment directly or indirectly from the appellant's clients. The restraint sought to be imposed is, we think, reasonable, not against public policy and, therefore, enforcible.

The Andrews firm called Addison Dalton, a certified public accountant, as an expert witness. Dalton testified that the partnership covenant in question is similar to those found in partnership agreements of other accounting firms. Dalton also said that it is the custom in the accounting profession for firms to buy the practices of other individual accountants or accounting firms and that payment is customarily based upon the fees or business of the selling accountant. He regarded the arrangement set forth in the Andrews firm's covenant as reasonable. The Persinger firm's decision to honor the covenant adds credence to this view.

The restriction is not unreasonable as to time, area, or persons. It is necessary to protect the legitimate interests of the Andrews firm, and it is not harmful to the general public. There was no showing that the covenant has affected or will affect Foti's ability to earn a livelihood. This covenant, therefore, is reasonable in light of the criteria this court has set forth in *Meissel* v. *Finley, supra.*

■ We find no merit in Foti's argument that the provisions of the restrictive covenant should only apply when Foti *personally* performs services for clients of his former partnership. As the trial court noted, such an interpretation would permit Foti to circumvent the covenant and accomplish indirectly what he could not accomplish directly. The object of the restrictive covenant is to prevent a former partner from taking clients away from his former partnership without proper compensation. If Foti's construction were adopted, it would allow Persinger, Foti and Company to continue serving the same clients formerly served by Foti as a partner in Andrews, Burket & Co. by allocating the work of the clients to one of Foti's partners or to an employee in his new firm. Foti's interpretation would render the covenant useless.

The judgment of the lower court will be

*Affirmed.*