**POWER DISTRIBUTION, INC., Plaintiff,**

**v.**

**EMERGENCY POWER ENGINEERING, INC., Defendants.**

**Civ. A. No. 83–0354–R.**

United States District Court, E.D. Virginia, Richmond Division.

Aug. 22, 1983.

John B. Thompson, Christopher M. Malone, Thompson & McMullan, Richmond, Va., for plaintiff.

Stanley K. Joynes, III, Bruce E. Arkema, Rilee, Cantor, Arkema & Edmonds, Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff, a Virginia corporation, commenced this action in the Circuit Court of Richmond, Virginia against Emergency Power Engineering, Inc., ("EPE") a California corporation whose principal place of business is in California, and against two officers of that company who are citizens of California. As the amount in controversy exceeds $10,000, exclusive of interest and costs, and the parties are of diverse citizenship, the Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), and its removal to this Court pursuant to 28 U.S.C. § 1441(a) was proper. The matter is before the Court on defendants' motion for summary judgment.

Plaintiff designs, manufactures, and markets power supply equipment for computers. On June 29, 1981, plaintiff hired John C. Lee, IV as a sales representative; he was later promoted to regional sales manager for the East Coast. On February 19, 1982, Lee executed an agreement with plaintiff in which Lee promised, *inter alia,* that he would not, within one year following the termination of his employment with plaintiff, "accept any employment with any person or entity, or engage in any activity either directly or on behalf of any person or entity in competition with" plaintiff. On February 3, 1983, Lee resigned from plaintiff's employment and announced that he intended to become a sales representative for EPE. Lee subsequently did enter into some sort of working relationship with EPE, apparently either as an employee or as an independent contractor.

■ Plaintiff brought this action for damages, alleging defendants induced Lee to breach the February 19, 1982 agreement with plaintiff. Defendants now move for summary judgment, asserting that the agreement is unenforceable on several

grounds. Though the nature of an action for tortious inducement of breach of contract is not settled in Virginia,[1] plaintiff agrees with defendants' beginning premise that the existence of an enforceable contract is an essential element of the action.

Prior to the instant motion, defendants sought a dismissal of the complaint on the ground that plaintiff's agreement with Lee, which was incorporated into the complaint, was unenforceable on its face for failure to specify its territorial scope or the scope of employment activities covered. Defendants had read *Alston Studios, Inc. v. Lloyd V. Gress & Associates*, 492 F.2d 279, 283 (4th Cir.1974), as formulating a two-tiered analysis for covenants not to compete under Virginia law. First, according to defendants' formulation, the Court was to examine the covenant on its face to determine whether it was "incident and ancillary to the contract of employment and limited as to area and duration," *id.* Only if the covenant satisfied these conditions on its face was the Court to proceed to determine whether the terms of the covenant were reasonable.

Plaintiff argued, in opposition to the motion to dismiss, that defendants were attempting to formulate a per se rule of unenforceability for covenants not to compete, whereas Virginia law required in each instance an examination of the facts surrounding the covenant to determine whether the covenant was reasonable under the circumstances. *See, e.g., Meissel v. Finley,* 198 Va. 577, 580, 95 S.E.2d 186, 188 (1956) (examining reasonableness from standpoints of employer's legitimate business interests, harshness to employee, and interests of public). The Court denied the motion to dismiss without stating its reasons,

though the Court essentially agreed with plaintiff that the proper inquiry under Virginia law was whether the covenant was reasonable under the circumstances.[2] Since the Court could not conclude that the covenant would be unreasonable under any conceivable circumstances, a denial of the motion was appropriate.

The Court's denial of the motion to dismiss thus left open the possibility that the defendants could move for summary judgment, again asserting that the covenant was overbroad as to the territory and the activities covered and so was unreasonable under the circumstances. This the defendants have done, though they also assert the covenant is unenforceable for lack of consideration.

Plaintiff has responded with a single affidavit signed by plaintiff's president. This affidavit repeats virtually word for word the extensive, conclusory statement of facts set forth in plaintiff's memorandum in opposition to the instant motion and in plaintiff's memorandum in opposition to the previous motion to dismiss.[3] The Court has strong reservations as to whether this affidavit satisfies Fed.R.Civ.P. 56(e), which requires that "opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." The Court nonetheless will accept the affidavit as factual for purposes of the instant motion.

Plaintiff's affidavit sets forth the following facts with regard to the reasonableness of the covenant. Plaintiff is a relatively new, small company competing, in a national market, with four other, stronger compa-

---

**1.** *See Farnsworth Cannon, Inc. v. Grimes,* 635 F.2d 268, 273 (4th Cir.1980).

**2.** The defendants' proposed formulation would not be an unreasonable mode of analysis to employ, but the Court is not satisfied that Virginia has adopted such a mode. The Court does not read *Alston Studios* as either creating such a two-tiered approach or suggesting Virginia follows such an approach. Defendants are attempting to create a doctrine out of what

was only a passing remark by the Fourth Circuit.

**3.** The statement of facts in plaintiff's memorandum in opposition to the motion to dismiss was not supported by any affidavits. But since all such factual matters extrinsic to the pleadings are irrelevant to a motion to dismiss under Rule 12(b), the Court would have disregarded the statement of facts at that point in any event.

nies, including EPE. Thus, plaintiff particularly depends on having an effective sales force. In training Lee to be part of that sales force, plaintiff afforded him access to a significant amount of confidential information and invested significant sums in his training. Plaintiff contends that even though a particular member of the sales staff might be expected to limit his or her sales efforts to a specified region, as Lee was expected to do in the East Coast region, those efforts could lead to transactions involving parties outside the region.

Defendants do not dispute these facts.[4] The question of reasonableness is, of course, a mixed question of law and fact. Given no genuine issue of material fact concerning the underlying facts, the Court can properly make on summary judgment the legal determination as to the reasonableness *vel non* of the covenant. *See, e.g., Fitzsimmons v. Greater St. Louis Sports Enterprises, Inc.,* 63 F.R.D. 620, 622 (S.D.Ill. 1974) (where the only issue is legal consequence of undisputed facts, summary judgment is appropriate).

The facts plaintiff offers establish that it was reasonable for plaintiff to seek a covenant not to compete with Lee. Lee apparently had gained knowledge that could be of use to a competitor, and plaintiff was in such a vulnerable competitive position that giving such an edge to a competitor could significantly harm plaintiff. The Court concludes, however, that plaintiff's circumstances did not justify the inordinately oppressive terms of plaintiff's covenant with Lee.

As to territorial limitation, plaintiff asserts that the covenant included a "functional limitation" in that it only applied where plaintiff competed.[5] Plaintiff's own facts establish, however, that the area in which plaintiff competed was by no means fixed. Thus, the effect of the "functional limitation" is to extend the territorial scope of the covenant to every location where plaintiff might *potentially* compete, which included at least the entire United States.[6] The *in terrorem* effect of such a broad provision on the employee is not justified by the legitimate business needs of plaintiff. It is not reasonable for a Virginia corporation to restrain a former employee from working in Oklahoma simply because this fledgling company has once done business there or hopes to do business there. Such a far-ranging and vague provision is the antithesis of the "quite narrow and well defined geographic limitations" upheld by Virginia courts. *Alston Studios, Inc., v. Lloyd V. Gress & Associates,* 492 F.2d at 283 n. 5; *see also Davis-Robertson Agency v. Duke,* 119 F.Supp. 931, 935–36 (E.D.Va. 1953).

Plaintiff contends that a similar "functional limitation" applies to the range of employment activities proscribed by the covenant. Admittedly the language of the covenant, *see note 5 supra,* is so vague that it is indeed susceptible of a meaning that would not involve an overbroad proscription. The provision could, for example, be taken to refer only to employment activities in which the former employee would be able to exploit the confidential information gained from plaintiff in such a way that plaintiff would suffer in transacting the kind of business where plaintiff obviously competes. Indeed, such a narrow proscription of employment activities might well be justified by plaintiff's legitimate business interests.

4. Defendant Imhoff has filed a motion to dismiss the complaint against him for lack of personal jurisdiction. In support of this motion, Imhoff has submitted an affidavit from Lee which contradicts plaintiff's affidavit in certain respects. These conflicts do not, however, pertain to the facts relevant to the reasonableness *vel non* of the covenant.

5. The covenant stated that Lee could not "accept any employment with any person or entity, or engage in any activity either directly or on behalf of any person or entity in competition with" plaintiff.

6. The affidavit of its president states that plaintiff "is a young company which faced the task of developing a technologically sophisticated product line and at the same time a national marketing organization. . . ."

On the other hand, the provision could, without straining, be taken to prohibit much more.[7] Therein lies the *in terrorem* effect on an employee, who must try to interpret the ambiguous provision to decide whether it is prudent, from a standpoint of possible legal liability, to accept a particular job or whether it might be necessary to resist plaintiff's efforts to assert that the provision covers a particular job. The mere act of subjecting the employee to such uncertainty offends "sound public policy," *see Meissel v. Finley,* 198 Va. at 580, 95 S.E.2d at 188.

■ Thus, the Court need not determine the exact reach of the covenant in order to conclude that it is overbroad. The fact that its reach is so difficult to determine and may so easily exceed in effect the permissible reach renders the covenant overbroad.[8]

Therefore, the Court concludes that the covenant is unenforceable for not being clearly limited in the scope of employment activities it proscribes to a scope that would be reasonable under the instant circumstances. *Cf. Richardson v. Paxton Co.,* 203 Va. 790, 127 S.E.2d 113 (1962) (finding unenforceable as overbroad a covenant that prohibited work in a more clearly defined set of businesses).

The Court having concluded that the covenant is unenforceable by reason of the unreasonable overbreadth heretofore referred to, it is unnecessary to consider whether the covenant is void also for lack of consideration.[9] Defendants' motion for summary judgment will be granted, and the action will be dismissed.

An appropriate order will issue.

---

7. The plaintiff contends that the modifier "in competition" refers back to the employee's "employment" or "activity." This interpretation seems the most sensible. However, the modifier immediately follows "person or entity," and the provision refers to "any employment" and "any activity." As defendants argue, the provision thus could be taken to prohibit the employee from taking any kind of job, whether or not it has anything to do with plaintiff's business, with an employer that competes with plaintiff. Even though this interpretation seems less sensible, the drafting of the provision does suggest it, and the employee would not be unreasonable in supposing plaintiff might try to give the provision such a broad reach. Whether or not a court would uphold the covenant if the plaintiff were to try to apply it to such a situation, the employee's consideration of alternative employment might well be chilled by his or her fear that the plaintiff would try to apply the covenant in such a manner.

The provision is further made vague by the use of the term "in competition." There is room for substantial disagreement over whether a particular activity or a particular employer is in competition with the plaintiff.

8. A covenant not to compete operates in restraint of trade. *See, e.g., Richardson v. Paxton Co.,* 203 Va. 790, 795, 127 S.E.2d 113, 117 (1962). The amount by which it restrains trade is not merely the amount of enforceable legal effect a court would give it if an employee challenged it, but the amount of effect it has on an employee's behavior. Where, as here, the amount of such restraint is not justified by the employer's legitimate business needs, the covenant offends public policy.

9. The Court's resolution of this motion also renders moot defendant Imhoff's motion to dismiss for lack of personal jurisdiction, and it will accordingly be denied as moot.