# CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

Wahsei Miran

v.

Alan Merullo
and Greg Smith

March 10, 2008

Case No. CL07-5878

BY JUDGE A. JOSEPH CANADA, JR.

This case arose as a result of a Complaint filed by the plaintiff for damages as a result of an alleged breach of a contractual agreement between the parties. In September 2004, Plaintiff, Wahsei Miran, and Defendants, Alan Merullo and Greg Smith, created WAG Eastern Academy, L.L.C., and entered into an Operating Agreement for the purpose of opening a martial arts training academy in Chesapeake, Virginia ("Chesapeake School"). The Chesapeake School was modeled after and shared the same name as the plaintiff's existing martial arts academy in Virginia Beach, the Eastern Academy of Martial Arts.

Under the terms of the Operating Agreement, the plaintiff agreed to lend his name, time, and talent to the L.L.C. by conducting two martial arts class sessions per month and assisting the defendants to keep abreast of martial arts techniques by providing them lessons. The defendants agreed to pay the plaintiff an amount equal to 10% of the monthly profit from the Chesapeake School. The agreement also contains a non-competition clause which states that:

> In the event that despite a cooperative business relationship
> between the partners, Alan and Greg open a similar martial
> arts school without affording Wahsei the opportunity to

participate, Alan and Greg shall owe a penalty to Wahsei in the amount of $15,000.00. This provision will remain in effect indefinitely.

See Plaintiff's Exhibit A, ¶ 8.

In March 2007, the defendants ceased making payments to the plaintiff and changed the name of the Chesapeake School to "Bushido Mixed Martial Arts." The defendants continued to willfully distribute marketing materials with the plaintiffs name and likeness. The defendants also continued to use a distinctive symbol created by the plaintiff for Eastern Academy of Martial Arts. However, the defendants failed to provide the plaintiff the opportunity to participate in the new school. The plaintiff now requests this Court grant him $750,000.00 for actual damages, liquidated damages, and punitive and exemplary damages, plus attorney's fees against the defendants.

The defendants filed a motion for partial summary judgment on the issue of the enforceability of the non-competition clause in the Operating Agreement.

*Standard for Summary Judgment*

A court may grant a motion for summary judgment in cases where no material facts are genuinely in dispute. Va. Sup. Ct. R. 3:20; *Thurmond v. Prince William Prof'l Baseball Club, Inc.*, 265 Va. 59, 64, 574 S.E.2d 246 (2003); *Majorana v. Crown Cent. Petroleum Corp.*, 260 Va. 521, 525, 539 S.E.2d 426 (2000). A grant of summary judgment must be based upon undisputed facts established by the pleadings, admissions in pleadings, and admissions made in answers to requests for admissions. *Hanley v. Stanley Martin Cos.*, 266 Va. 345, 351, 585 S.E.2d 567 (2003). Additionally, the trial court must consider inferences from the facts in the light most favorable to the non-moving party, unless the inferences are strained, forced, or contrary to reason. *Carson v. LeBlanc*, 245 Va. 135, 139-40, 427 S.E.2d 189 (1993). Once it is established that there are no material facts genuinely in dispute, the Court must determine whether the "moving party is entitled to judgment as a matter of law." *Leeman v. Troutman Builds, Inc.*, 260 Va. 202, 206, 530 S.E.2d 909 (2000).

*Non-Competition Clause or Liquidated Damages Provision*

In the construction of a contract, a court must consider the instrument as a whole, rather than considering any one provision in isolation. *See Worrie v. Boze*, 191 Va. 916, 925, 62 S.E.2d 876 (1951). The courts should look beyond

the words expressed to consider their object and purpose, as disclosed by the language, the subject matter, and the condition and relation of the parties. *Id.* (citing *White v. Sayers,* 101 Va. 821, 828, 45 S.E. 747 (1903)). Thus, ascertainment of the intent of the contracting parties is the cardinal rule in the construction of agreements. *Hall v. MacLeod,* 191 Va. 665, 671, 62 S.E.2d 42 (1950).

The clause at issue in this motion for partial summary judgment is contained within an operating agreement entered into between the parties to form WAG Eastern Academy, L.L.C. The L.L.C. was formed for the purpose of establishing a new martial arts facility, similar to an existing facility owned and operated by the plaintiff. Among other provisions in the contract, the parties agreed that during their *cooperative business relationship,* Alan and Greg would owe Wahsei a penalty of $15,000.00 if they opened a *similar martial arts school* without affording him the *opportunity to participate.*

The plaintiff urges this court to construe the Non-Competition Clause as a liquidated damages provision. In support of this proposition, he indicates that the general definition for a covenant not to compete is "an agreement, generally part of a contract of employment or a contract to sell a business, in which the covenantor agrees for a specific period of time and within a particular area to refrain from competition with the covenantee. *Black's Law Dictionary* 329 (5th ed. 1979).

The contested clause fails to fall neatly within the definition for a covenant not to compete. However, the Operating Agreement clearly envisioned a joint venture between the parties to open and operate a new martial arts facility. The Non-Competition Clause (1) proscribes the defendants from opening a similar facility, (2) during the cooperative business relationship between the parties, (3) without including the plaintiff, (4) by use of a $15,000.00 penalty should such an event occur. Therefore, we may arrive at a discernible timeframe and a clear effort to prevent competition due to the penalty for a "similar martial arts school." The parties clearly intended the clause to prevent the defendants from opening a competing business, and this clause should properly be categorized as a covenant not to compete.

*Validity of the Non-Competition Agreement*

The Virginia courts employ a three-part test in determining the validity of a non-competition agreement between an employer and employee:

(1) Is the restraint, from the standpoint of the employer, reasonable in the sense that it is no greater than is necessary to protect the employer in some legitimate business interest?

(2) From the standpoint of the employee, is the restraint reasonable in the sense that it is not unduly harsh and oppressive in curtailing his legitimate efforts to earn a livelihood?

(3) Is the restraint reasonable from the standpoint of a sound public policy?

*Meissel v. Finley*, 198 Va. 577, 580, 95 S.E.2d 186 (1956).

This criterion is generally distilled into a reasonableness test focusing on the interrelated issues of (i) the duration of the restriction, (ii) geographic scope of the restriction, and (iii) breadth of the activity being restricted. See *Simmons v. Miller*, 261 Va. 561, 581, 544 S.E.2d 666 (2001) ("Trial courts must not consider function, geographical scope, and duration as three separate and distinct issues. Rather these limitations must be considered together").

The Non-Competition Clause in this case resists an easy classification in terms of duration, geographic scope, and breadth of activity. Restrictive covenants are disfavored restraints on trade, and the plaintiff bears the burden of proof, and any ambiguities must be construed in favor of the defendants. See *Simmons*, 261 Va. at 580-81.

In terms of duration, a complete reading of the Non-Competition Clause indicates that it will remain in effect so long as the parties maintain a cooperative business relationship. This interpretation necessarily involves a splicing of the language of the clause. However, the determination that the clause expires once the parties decide to end their business venture is a logical interpretation, since it is included in the body of the operating agreement of that business.

The Non-Competition Clause does not delineate any geographical scope and merely restricts the opening of a "similar martial arts school." However, it is necessary to consider the purpose of the Virginia courts in enforcing geographical limitations to determine whether the language is overly broad.

In developing such standards, the courts seek to protect an employee from restraining his ability to pursue a livelihood once his employment expires. See, e.g. *New River Media Group, Inc. v. Knighton*, 245 Va. 367, 429 S.E.2d 25 (1993) (Court held that a restraint was reasonable from the employee's standpoint in that the sixty mile, twelve month limit was not unduly harsh and oppressive in diminishing his legitimate efforts to earn a living); *Blue Ridge Anesthesia & Critical Care, Inc. v. Gidick*, 239 Va. 369, 373-74, 389 S.E.2d 467 (1990) (The agreement was not an unreasonable restraint of trade because the medical equipment supply field was "a wide open field with heavy competition, with multiple competing products. . . .")

However, in *Foti v. Cook*, the Virginia Supreme Court indicated that the courts must also consider the parties involved, their respective positions, and the circumstances of the transaction. 220 Va. 800, 806, 263 S.E.2d 430 (1980). In *Foti*, all parties were partners in an accounting firm and signed a partnership agreement that included a non-compete covenant. *Id.* at 802. The covenant provided that a partner who left the firm voluntarily would not offer services to partnership clients for two years. *Id.* The Court indicated that instead of dealing with an employer and employee, this contract arose between senior partners, who "stood upon equal footing at the bargaining table." *Id.* at 806. Therefore, the restriction was not unreasonable as to time, area, or persons and was enforceable. *Id.* at 807.

In this matter, the parties involved also stood on equal footing as partners in a new enterprise. The bargaining disadvantage that inhibits an employee in negotiating with an employer was not present, and the defendants possessed sufficient clout to object to the clause at the time of formation. Furthermore, the concerns regarding a restraint on future employment are alleviated by the fact that the clause in this case does not contemplate any restriction after the parties' business relationship ends.

Moreover, the Non-Competition Agreement does not wholly prevent the defendants from pursuing another business venture during their business relationship with the plaintiff. Instead, it imposes a penalty of $15,000.00, should the defendants decide to operate a similar business during their relationship. While the financial cost constitutes a deterrent to the defendants' opening of a competing business, it does not rise to the level of an injunction preventing such an act.

If the language of a covenant is so vague that it is susceptible of a meaning that could be taken to impose an overbroad restriction, it must be struck down as offending sound public policy. See *Power Distribution, Inc. v. Emergency Power Engineering*, 569 F. Supp. 54, 58 (E.D. Va. 1983). In *Power Distribution, Inc.*, the employee agreed that he would not "accept any employment with any person or entity, or engage in any activity either directly or on behalf of any person or entity in competition with his employer." The court indicated that it need not determine the exact reach of the covenant in order to determine that it was overbroad. The fact that its reach was so difficult to determine and might exceed the permissible reach of such a covenant was enough to render such a provision invalid. *Id.* at 57-58. However, the language in this clause contemplates a specific monetary penalty in a specific circumstance, the opening of a similar martial arts studio during the cooperative business relationship of the parties. A plain reading of the clause limits its application to conduct occurring during the business

116

relationship of the parties. As such, it does not offend Virginia public policy nor act as an unduly oppressive restraint on the future employment of the defendants. Therefore, the motion for partial summary judgment is denied.